**Leporace v. Mechanick**

C.P. of Montgomery County, no. 06-08098.

*Anthony P. Baratta*, for plaintiffs.
*E. Chandler Hosmer III*, for defendant.

DANIELE, *J.*, May 26, 2010—Plaintiffs appeal from this court's order dated January 17, 2007 and entered upon the docket on January 18, 2007. This order sustained defendant's preliminary objections to plaintiffs' amended

complaint with respect to plaintiffs' claim for defamation and punitive damages.[1]

## PROCEDURAL AND FACTUAL HISTORY

Plaintiffs filed a writ of summons on April 5, 2006. Following the filing of preliminary objections to the complaint, plaintiffs filed an amended complaint on July 21, 2006. The amended complaint alleges causes of action for defamation, loss of consortium, and tortious interference with contractual relations.

On August 9, 2006, defendant filed preliminary objections to plaintiffs' amended complaint. Plaintiff filed a response to the preliminary objections. We held argument on January 17, 2007.

We entered an order on January 18, 2007 that sustained defendant's objections to the claim for defamation and request for punitive damages and overruled the objection to the claim for tortious interference with contractual relations.

Judge Wendy Demchick-Alloy entered an order on March 4, 2010 that granted defendant's motion for summary judgment related to the claim for tortious interference with contractual relations.

On March 19, 2010, plaintiffs filed a notice of appeal related to the order entered on March 4, 2010. On March 30, 2010, plaintiffs filed an amended notice of appeal to

---

1. Plaintiffs' concise statement of matters complained of on appeal does not challenge the striking of plaintiffs' claim for punitive damages stated in the amended complaint. Therefore, it appears that plaintiffs are not challenging the portion of the order entered on January 18, 2007 which struck plaintiffs' claim for punitive damages.

include an appeal from our order entered on January 18, 2007. Following the entry of an order to file a concise statement, plaintiffs filed their concise statement on April 6, 2010.

This action arises in connection with an independent psychiatric examination conducted by defendant on March 7, 2005.

In March of 1995, Mr. Leporace purchased a disability insurance policy from New York Life Insurance Company ("New York Life").[2] The policy contains the following the pertinent definitions:

(1) "Total Disability" means the Insured can not do the substantial and material duties of his or her regular job. The cause of the total disability must be an injury or a sickness.

(2) "Regular Job" the occupation, or occupations if more than one, in which the insured is engaged when a disability starts.

On the application for the disability policy, Mr. Leporace listed his occupation as "president, supervisor, owner" of AET Environmental, Inc. The policy permits New York Life to examine its insured, by physicians which it approves, while a claim continues. Mr. Leporace became disabled on May 22, 1997. Thereafter, he was diagnosed with bipolar disorder.

---

2. Plaintiffs allege in the amended complaint that New York Life came to be known as Unum Provident/The Paul Revere Life Insurance Company as Administrator for New York Life Insurance Company. Amended Complaint, ¶10. In this opinion, we will refer to the insurer as New York Life.

Mr. Leporace applied for disability benefits on June 25, 1997. New York Life paid benefits to Mr. Leporace from July 21, 1997 through May 31, 2005.

New York Life arranged for two independent medical examinations ("IMEs") to occur in 1999. Drs. Grosso and Heilbrun conducted these examinations. Plaintiffs' counsel, as well as a court reporter, attended both of these IMEs. Following these IMEs, New York Life continued to pay policy benefits to Mr. Leporace.

In addition to Dr. Mechanick's examination of Mr. Leporace on March 7, 2005, psychologist Steven Samuel performed a neuropsychological examination of Mr. Leporace on March 2, 2005. During both of these examinations, plaintiffs' counsel as well as two court reporters were present.

Dr. Samuel prepared a report dated March 9, 2005, which he sent to New York Life. The report contained the following relevant statements:

(1) "I indicated to Mr. Baratta (plaintiffs' counsel) that having him, and the stenographer, present, during the neuropsychological testing administration, represented a non-standardized administration of the tests; therefore, i would not agree to this condition."

(2) "The presence of any third party during a neuropsychological testing evaluation poses a serious risk to the conduct of a valid evaluation."

Following his examination of Mr. Leporace, Dr. Mechanick prepared a report for New York Life dated April 7, 2005. Among the information Dr. Mechanick used in preparing the report were the records of Mr. Leporace's treating medical providers as well as the reports of the

IMEs that had been conducted in 1999.

Dr. Mechanick's April 7 report includes the following relevant statements:

(1) "Mr. Leporace's history and clinical course have a number of features that are not typical of bipolar disorder." (Report of April 7, 2005, p. 18).

(2) "His presentation during my examination and that of Drs. Grosso and Heilbrun has been exaggerated and not typical for a bipolar or other depressive disorder." *Id.* at page 20.

(3) "Mr. Leporace has repeatedly been uncooperative with his psychiatric and psychological IME's." *Id.* at 21.

Dr. Mechanick concluded that Mr. Leporace's psychiatric diagnoses are depression not otherwise specified and malingering. He opines that Mr. Leporace's current psychiatric symptoms do not currently limit his capacity to function in any occupation. *Id.* at 22.

Dr. Samuel provided a report to New York Life dated April 21, 2005 based on his March 2, 2005 examination. In summary, Dr. Samuel indicates that, as he was not permitted to administer additional testing under conditions which he stipulated, he was unable to conclude whether Mr. Leporace is malingering. (April 21, 2005 report, pp. 5- 6) The report concludes with a request to complete the evaluation of Mr. Leporace.

Following receipt of Dr. Samuel's April 21, 2005 report, Dr. Mechanick prepared a supplemental report for New York Life dated May 7, 2005. The report notes that Dr. Mechanick had reviewed the April 21 report and discussed

it with Dr. Samuel. Dr. Mechanick's report includes the following statements:

(1) "Dr. Samuel's evaluation of Mr. Leporace supports my conclusion that Mr. Leporace is malingering. Mr. Leporace's performance on the MMPI-2 is consistent with malingering."

(2) "Dr. Samuel noted that Mr. Leporace's profiles on the nonverbal and verbal subtests of the validity indicator profile were invalid due to the large number of items he left unanswered. Based on my examination of Mr. Leporace it is my opinion that Mr. Leporace has the cognitive ability to complete such testing and that his choice to leave so many items unanswered indicates malingering."

(3) "Mr. Leporace's unwillingness to participate in neuropsychological testing under standard testing conditions and without his attorney being present is also suggestive of malingering."

New York Life issued a letter to plaintiffs' counsel dated May 31, 2005. In the letter, New York Life indicates that based on its review of the record, including the IMEs conducted on March 2 and March 7, 2005, it will no longer pay benefits past May 31, 2005.

## DISCUSSION

The question presented by a demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. *Morley v. Gory*, 814 A.2d 762, 764 (Pa. Super. 2002) (citation omitted). The court must accept as true all material averments of the complaint. *Id.*

Plaintiff must prove the following elements to succeed

on a claim for defamation: (1) the defamatory character of the communication, (2) its publication by the defendant, (3) its application to the plaintiff, (4) the understanding by the recipient of its defamatory meaning, (5) the understanding by the recipient of it as intended to be applied to the plaintiff, (6) special harm resulting to the plaintiff from its publication, and (7) abuse of a conditionally privileged occasion. 42 Pa.C.S.A. § 8343(a).

Plaintiffs allege in the amended complaint that defendant had, prior to his examination of Mr. Leporace, predetermined that Mr. Leporace was a malingerer. (Amended Complaint, ¶22). Plaintiffs allege that such a predetermination is evident based on Dr. Mechanick's commentary (in his May 7, 2005 report) to Dr. Samuel's April 21, 2005 report. *Id.* Plaintiffs aver that Dr. Mechanick could not have formed a medical opinion prior to his examination of Mr. Leporace. Therefore, plaintiffs allege that Dr. Mechanick's predetermination is malicious and reckless.

Plaintiffs allege that Dr. Mechanick selectively chose portions of Dr. Samuel's report to support his malicious predetermination. *Id.* at ¶29.

Defamation is a communication which tends to harm an individual's reputation so as to lower him or her in the estimation of the community or deter third persons from associating or dealing with him or her. *Elia v. Erie Insurance Exchange*, 430 Pa. Super. 384, 390, 634 A.2d 657, 660 (Pa. Super. 1993)(citation omitted). Only statements of fact can support an action for libel or slander, not merely expressions of opinion. *Id.* (citation omitted) Whether a particular statement or writing constitutes fact or opinion is a question of law for the court to determine. *Id.* (citation

28

omitted)

We find that Dr. Mechanick's May 7, 2005 supplemental report constitutes a medical opinion. Dr. Mechanick's April 7, 2005 report stated that he had reviewed the records of Mr. Leporace's medical providers as well as the prior IMEs in completing his report. This report cites to observations Dr. Mechanick noted during the March 7, 2005 psychiatric examination.

The record does not support the allegation that Dr. Mechanick had formed a predetermination with respect to Mr. Leporace prior to his examination of Mr. Leporace. Rather, it is clear from a review of the May 7, 2005 report that is supplements Dr. Mechanick's prior conclusion, stated in his April 7 report, that Mr. Leporace was a malingerer.

This case is analogous to *Elia,* supra. In *Elia,* the plaintiff was involved in a motor vehicle accident and sought first-party medical and wage loss benefits. At the request of plaintiff's insurer, a physician conducted an IME of plaintiff. The physician concluded that the results of his examination are "typical of malingering." Plaintiff filed an action that included a claim for defamation against the physician who conducted the IME. The trial court granted summary judgment for the physician. The Superior Court affirmed. It determined that the physician had examined the plaintiff at the request of the insurer and with plaintiff's consent. The court noted that a conditional privilege existed with respect to the physician's report as the commonwealth, insurance carriers, and insureds have an interest in precluding payments on illegitimate and fraudulent claims. Ultimately, the court concluded that plaintiff's complaint did not allege an abuse of the

conditional privilege.

In the case at hand, New York Life requested Dr. Samuel and Dr. Mechanick to each conduct an IME of Mr. Leporace pursuant to the terms of the disability policy. Dr. Mechanick's April 7, 2005 report took into consideration the records of Mr. Leporace's medical providers as well as the IMEs conducted in 1999. Taking this information into account, along with his personal observations of Mr. Leporace during the March 7, 2005 examination, Dr. Mechanick rendered his professional opinion in which he concluded that Mr. Leporace was malingering. He opined that Mr. Leporace's current psychiatric symptoms do not currently limit his capacity to function in any occupation.

The fact that Dr. Mechanick referenced portions of Dr. Samuel's April 21, 2005 report does not support the allegation that Dr. Mechanick cited the portions to support his predetermined conclusion. Rather, the May 7, 2005 report was a supplemental report which merely reiterated Dr. Mechanick's prior opinion, expressed in his April 7 report, that Mr. Leporace's symptoms suggested malingering.

## CONCLUSION

We find that Dr. Mechanick's report of May 7, 2005 constitutes an opinion. More specifically, it is a professional medical opinion based on personal observations of Mr. Leporace along with a review of medical records, prior IMEs, and the April 21, 2005 report of Dr. Samuel.

As we have concluded that Dr. Mechanick's reports are statements of opinion, plaintiffs cannot proceed with a defamation action. Therefore, we believe our order was proper and should be affirmed.